UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENDRICK YARBROUGH,

                Plaintiff,

v.

CATHY M. GARRETT,

                Defendant,

_____/

CASE NO. 06-CV-14021-DT
JUDGE MARIANNE O. BATTANI
MAGISTRATE JUDGE PAUL J. KOMIVES

**REPORT AND RECOMMENDATION REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. Ent. 26) and
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. Ent. 31)**

**Table of Contents**

I.     **RECOMMENDATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **REPORT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
     A.     **State Court Proceedings** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
     B.     **Yarbrough's Requests for State Court Proceeding Transcripts** . . . . . . . . . . . **4**
     C.     **The Instant Prisoner Civil Rights Complaint** . . . . . . . . . . . . . . . . . . . . . . . . . **7**
     D.     **Plaintiff's November 2, 2006, Motion for Summary Judgment** . . . . . . . . . . . **8**
     E.     **Pending Motions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**
     F.     **Fed. R. Civ. P. 56** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
     G.     **Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**
           1.     **Plaintiff's Complaint Is Based Upon The First and Fourteenth
                 Amendments.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**
           2.     **Plaintiff's Claims Should Be Analyzed under the First Amendment
                 Right to Petition Clause, the Fourteenth Amendment Due Process
                 Clause and the Fourteenth Amendment Equal Protection Clause.**
                 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**
           3.     **However, Garrett is entitled to quasi-judicial immunity.** . . . . . . . . . **21**

III.   **NOTICE TO PARTIES REGARDING OBJECTIONS** . . . . . . . . . . . . . . . . . . . . . . . **26**

I.      **RECOMMENDATION:**  The Court should conclude that defendant is entitled to quasi-judicial immunity and on that basis grant defendant's motion for summary judgment (Doc. Ent. 26) and deny plaintiff's motion for summary judgment (Doc. Ent. 31).

II.     **REPORT:**

Plaintiff's complaint alleges that his request for preliminary examination and trial transcripts from his state court cases were wrongfully denied.  For this reason, a brief review of the state court proceedings is appropriate.

A.      **State Court Proceedings**

1.      **Recorders Court of Detroit (File No. 75-001350)**

Hendrick Yarbrough's preliminary examination took place on March 3, 1975.  A trial began on or about June 16, 1975, and concluded on June 18, 1975 when Yarbrough was found guilty.  Doc. Ent. 28 at 2.  On July 21, 1975, Yarbrough was sentenced to life for armed robbery (Mich. Comp. Laws § 750.529) and first-degree murder (Mich. Comp. Laws § 750.316).  Doc. Ent. 28 at 2; Offender Search ([www.michigan.gov/corrections)](www.michigan.gov/corrections).  During these proceedings, Yarbrough was represented by Fred K. Persons.  Doc. Ent. 28 at 2 (Case No. 75-001350).

On September 9, 1975, Judge Dalton A. Roberson of Detroit's Recorder's Court entered an order for appointment of counsel and transcript of trial at public expense.  Leonard Townsand was assigned as counsel for post-conviction proceedings.  Doc. Ent. 28-2 at 2.  On February 19, 1976, the Michigan Court of Appeals granted counsel's motion to withdraw and affirmed Yarbrough's conviction.  In so doing, the Michigan Court of Appeals noted that the appeal was "wholly frivolous."  Doc. Ent. 28-3 at 2 (Case No. 25664).  On January 19, 1977, the Michigan

Supreme Court denied Yarbrough's delayed application for leave to appeal (LC: 75-01350/COA: 25664). Doc. Ent. 28-6 at 2.[1]

## 2. Recorders Court of Detroit (File No. 75-002241)[2]

On April 12, 1976, Hendrix[3] Yarbrough was convicted by a jury of four counts of first-degree murder for an incident that occurred on December 15, 1973. *People v. Yarbrough*, Docket No. 29306, 78 Mich. App. 81, 82, 259 N.W.2d 248 (1977). *See also* www.michigan.gov/corrections, "Offender Search."

On appeal, plaintiff was represented by Carl Ziemba. Yarbrough appealed as of right, and the Court of Appeals considered "whether the trial court was correct in ruling, in effect, that once a motion for mistrial is withdrawn, it cannot be renewed." *Yarbrough*, 78 Mich. App. at 84, 259 N.W.2d at 249. On September 6, 1977, the Michigan Court of Appeals reversed and remanded for a new trial. *Yarbrough*, 78 Mich. App. at 87, 259 N.W.2d at 251 (Case No. 29306). Rehearing was denied on October 14, 1977. *Id*. at 81, 259 N.W.2d at 248.

On April 28, 1978, the Michigan Supreme Court considered the application for leave to appeal. In so doing, the Court vacated the Court of Appeals September 6, 1977 decision, remanded the case to the Court of Appeals,[4] and remanded Yarbrough's application for cross-

---

[1]Also, it appears that an evidentiary hearing took place on May 9, 1983, and a motion hearing took place on June 12, 1990. Doc. Ent. 28-4.

[2]In light of plaintiff's document requests addressed below, this report assumes that this is the Court and File No. associated with this set of facts.

[3]This Michigan Court of Appeals case spells Yarbrough's first name as "Hendrix".

[4]Specifically, the Supreme Court directed the Court of Appeals to consider whether "it would have been error for the trial court to refuse to grant [defendant's final request for mistrial]."

appeal to the Court of Appeals. *People v. Yarbrough*, No. 60621, 402 Mich. 920, 271 N.W.2d 430 (1978).

On July 18, 1978, the Michigan Court of Appeals reversed defendant's conviction and remanded the case for a new trial. *People v. Yarbrough*, Docket No. 78-1618, 84 Mich. App. 779, 781, 270 N.W.2d 689, 690 (1978). Specifically, the Court of Appeals stated that "it is elementary that a motion for mistrial lies within the sound discretion of the trial court[,]" and found that there was "[n]o abuse of discretion." *Yarbrough*, 84 Mich. App. at 780, 270 N.W.2d at 690.

On August 24, 1978, the Michigan Court of Appeals granted the prosecutor's motion for rehearing in order to reconsider its July 18, 1978 opinion. *People v. Yarbrough*, Docket No. 78-1618, 86 Mich. App. 105, 106-107, 272 N.W.2d 345, 345 (1978). On September 21, 1978, the Michigan Court of Appeals found that "refusal to grant defendant's renewed motion for a mistrial would not have been error. Since defendant's other allegations of error are also without merit, we affirm defendant's conviction." *Yarbrough*, 86 Mich. App. at 107-109, 272 N.W.2d at 345-346.

**B.      Yarbrough's Requests for State Court Proceeding Transcripts**

Yarbrough claims that he wrote to the sentencing court in order to obtain specified court documents or transcripts and indicated that "he needed them to pursue an appeal of right." Doc. Ent. 10 at 2. On or about May 13, 1988, Yarbrough wrote to Judge Roberson in Detroit Recorders Court seeking a copy of his preliminary examination and trial transcripts in Case No. 75-02241. Doc. Ent. 1 at 6; Doc. Ent. 30 at 22. On August 25, 1991, a request for these documents in Case No. 75-02241 was made to Judge Roberson, because Yarbrough sought to

file a M.C.R. 6.502[5] motion for relief from judgment.  This request mentions M.C.R. 6.433(C).[6]

Doc. Ent. 1 at 7; Doc. Ent. 30 at 23.  On September 27, 1991, Yarbrough wrote to the Recorders

Court clerk/court administrator (George Gish), seeking a copy of his preliminary examination

and trial transcripts regarding Case No. 75-02241.  The letter specifically mentions M.C.R.

6.433(C).  In the letter, plaintiff claimed that he never received his preliminary examination and

transcripts or his trial transcripts; he also claimed to be indigent and "entitled to one free copy at

public expense to pursu[e] [his] post-conviction relief remedies."  This letter is signed under

penalty of perjury.  Doc. Ent. 1 at 8; Doc. Ent. 30 at 24.[7]

On February 13, 2004, Yarbrough wrote to the Recorders Court Appellate Division Clerk

seeking a copy of his preliminary examination transcript in Case No. 75-02241 and noting that

he was amidst the appeals process.  Doc. Ent. 1 at 14; Doc. Ent. 30 at 28.  On July 19, 2004,

Yarbrough wrote to the Wayne County Circuit Court Clerk requesting the cost to obtain copies

of his preliminary examination and trial transcripts, specifically mentioning the dates of March

1, 1975 [presumably his March 3, 1975 preliminary examination in Case No. 75-001350] and

April 16, 1976 [presumably his April 12, 1976 conviction in Case No. 75-002241].  Doc. Ent. 1

at 9.  By a letter dated July 23, 2004, the Wayne County Clerk Staff informed Yarbrough that the

total number of pages of items he requested in Case Nos. 75-1350 and 75-2241 was 1200;

therefore, his copying charges would be $1,200.00.  Doc. Ent. 28-4 at 2.

---

[5]Subchapter 6.500 of the Michigan Court Rules concerns post-appeal relief. M.C.R. 6.501-6.509.

[6]Michigan Court Rule 6.433 governs "DOCUMENTS FOR POSTCONVICTION PROCEEDINGS; INDIGENT DEFENDANT".

[7]It appears that on or about February 14, 1994, Yarbrough filed a petition for writ of habeas corpus.  The case was closed on March 31, 1994.  *Yarbrough v. Burt*, Case No. 94-CV-60052.

On April 30, 2006, Yarbrough wrote to the Wayne County Clerk of the Court regarding Case No. 75-02241 in order to request copies of several documents for post-conviction purposes. Doc. Ent. 1 at 10; Doc. Ent. 28-5; Doc. Ent. 30 at 25. On May 2, 2006 Yarbrough requested a disbursement authorization for expedited legal mail in Wayne County Circuit Court Case No. 75-02241. It was signed on May 3, 2006. Doc. Ent. 1 at 15. On May 8, 2006, a written request was made of Wayne County Clerk Cathy M. Garrett which sought in part copies of Yarbrough's transcripts and records in Case No. 75-02241. It specifically mentions M.C.R. 6.433. Doc. Ent. 1 at 11-12; Doc. Ent. 28-5 at 3-4; Doc. Ent. 30 at 26-27. On May 28, 2006, Yarbrough wrote to Wayne County Circuit Court (Clerk of the Court) to request a copy of his transcripts and documents related to Case No. 75-02241. He specifically mentioned M.C.R. 6.433 and claimed that he had never received a copy of his files. He also stated that he needed the trial and sentencing transcripts in order to file a motion for relief from judgment under M.C.R. 6.500. This letter is signed under penalty of perjury. Doc. Ent. 1 at 13; Doc. Ent. 28-5 at 5; Doc. Ent. 30 at 30.

On or about July 24, 2006, Yarbrough filed a motion in Wayne County Circuit Court to obtain copies of his preliminary examination and trial transcripts. Doc. Ent. 10 at 2 ¶ 7. On July 25, 2006, Yarbrough signed an affidavit regarding suspension of prisoner fees/costs. Doc. Ent. 10 at 5. On July 27, 2006, Yarbrough signed an affidavit of indigency which was addressed to Wayne County Recorders Court. Doc. Ent. 10 at 4. The same day, Yarbrough requested disbursement authorizations for expedited legal mail to be sent to Kym L. Worthy of the Wayne County Prosecutor's Office and the Clerk of the Court for Wayne County Circuit Court. The requests were signed the same day. Doc. Ent. 1 at 16-17. According to plaintiff's July 27, 2006,

proof of service in Case No. 75–2241, plaintiff sent a motion for preparation of transcripts and

court file at public expense, as well as an affidavit of indigency, to Prosecutor Kym Worthy.

Doc. Ent. 1 at 18. At the time he filed this complaint (September 12, 2006), plaintiff had not

received a response to his motion. Doc. Ent. 1 at 4.

## C.    The Instant Prisoner Civil Rights Complaint

Yarbrough is currently incarcerated at the Lakeland Correctional Facility (LCF) in

Coldwater, Michigan where he is serving a life sentence. Doc. Ent. 38.[8] On September 12,

2006, while incarcerated at Ryan Correctional Facility (RRF) in Detroit, Michigan, he filed a

five-page verified pro se prisoner civil rights complaint against defendant Garrett. Doc. Ent. 1.

Citing 42 U.S.C. §§ 1983-1988, plaintiff alleges that state officials "have refused to forward

plaintiff a copy of his preliminary examination and trial transcripts[.]" Doc. Ent. 1 at 1, 4, 5.

Within the complaint, plaintiff states that he "seeks relief in the Federal Court to vindicate his

right of access to the courts, guaranteed under the 1st [A]mendment to the [U]nited [S]tates

[C]onstitution; [r]ight to a copy of his transcripts to appeal his criminal conviction, guaranteed

under the 14th [A]mendment to the [U]nited [S]tates [C]onstitution." Doc. Ent. 1 at 4. Plaintiff

requests a jury trial, appointment of counsel and any required expert witness, an award of

compensatory and punitive damages, and an award of costs. Doc. Ent. 1 at 5.[9]

Along with his complaint, plaintiff filed an application to proceed without prepayment of

fees and costs and authorization to withdraw funds from trust fund account. Doc. Ent. 2. On

---

[8]*See also* www.michigan.gov/corrections, "Offender Search."

[9]In plaintiff's February 21, 2008 filing, he characterizes his complaint as alleging that his
state constitutional rights were violation. There is no mention of the Michigan Constitution in the
"Statement of Facts" or the "Relief Sought" sections of plaintiff's complaint. Doc. Ent. 1 at 4-5.

September 29, 2006, Magistrate Judge Whalen entered an order waiving prepayment of the filing fee and directing payment of the initial partial filing fee and subsequent payments. Doc. Ent. 3. The same day, Magistrate Judge Whalen also entered an order directing service without prepayment of costs and authorizing the United States Marshal to collect costs after service is made. Doc. Ent. 4.[10]

On November 8, 2006, defendant filed an answer to plaintiff's complaint, as well as affirmative defenses and a reliance upon jury demand. Doc. Ent. 7. Also, defense counsel filed an appearance. Doc. Ent. 8.

Thereafter, on November 28, 2006, Judge Battani referred this case to me to conduct all pretrial proceedings. Doc. Ent. 12. On May 14, 2007, I entered a scheduling order setting the discovery cutoff for November 21, 2007, and the dispositive motion deadline for January 21, 2008. Doc. Ent. 20.

**D.      Plaintiff's November 2, 2006, Motion for Summary Judgment**

On November 2, 2006, before defendant filed her answer and before defense counsel filed an appearance, plaintiff filed a motion for summary judgment. Doc. Ent. 6. On May 14, 2007, I entered a report recommending that the Court deny plaintiff's motion for summary judgment. Doc. Ent. 18. On July 17, 2007, Judge Battani entered an order denying plaintiff's motion for summary judgment. Doc. Ent. 25.[11]

**E.      Pending Motions**

---

[10]On December 1, 2006, the Court received plaintiff's initial partial payment in the amount of $71.58. Doc. Ent. 13.

[11]Plaintiff also filed a motion to strike defendant's answer to the complaint and enter judgment. Doc. Ent. 10. However, on May 14, 2007, I entered an order denying that motion. Doc. Ent. 19.

Currently pending before the Court are (1) defendant's January 21, 2008 motion for summary judgment (Doc. Ent. 26) and (2) plaintiff's February 21, 2008, motion for summary judgment (Doc. Ent. 31). **In her January 21, 2008, motion, defendant claims "there is no factual dispute that plaintiff received one copy of all documents related to his criminal trial and conviction at taxpayer expense, and defendant had no obligation to provide plaintiff with another copy of these documents free of charge." Doc. Ent. 26 at 1.** Within her brief, defendant argues that (A) "[p]laintiff received one copy of his criminal proceeding record at taxpayer expense, as required by MCR 6.425[,]" (B) "[p]laintiff failed to show good cause or proof of indigence in seeking free copies of trial and preliminary exam transcripts[,]" (C) "[p]laintiff has not been eligible to appeal his conviction since 1977. Thus his claim that defendant has barred his access to the courts is without merit." Doc. Ent. 26 at 9-11. Defendant requests that the Court dismiss plaintiff's complaint with prejudice on the basis that "there is no genuine issue of material fact and Defendant is entitled to judgment as a matter of law[.]" Alternatively, defendant requests that "judgment be entered in her favor against Plaintiff Yarborough." Doc. Ent. 26 at 12.[12]

On January 23, 2008, I entered an order setting the response deadline to defendant's motion for summary judgment for February 25, 2008. Doc. Ent. 29. **On February 21, 2008, plaintiff filed a combined motion for summary judgment and response to defendant's**

_____

[12]Defendant has filed six (6) exhibits in support of her motion: (A) Recorder's Court Docket Entry, July 21, 1975 (File No. 75-001350.); (B) Court Order for Appointment of Counsel (File No. 75-001350); (C) Appellate Court Order (No. 25664/L.C. No. 75-01350); (D) Response to Defendant regarding the cost to copy transcripts requested (Case Nos. 75-1350/75-2241); (E) Plaintiff's letter demanding transcripts of hearings; and (F) Order Denying Delayed Application for Leave to Appeal (COA 25664 / LC 75-01350). Doc. Entries 27 and 28.

**motion for summary judgment.  Doc. Ent. 30 and 31.**[13]  Plaintiff claims that "there is no genuine issue of material fact and that [he], based on this record, has a right to free copies of [the trial and preliminary exam transcripts] as a matter of law."  Doc. Ent. 30 at 7.  Plaintiff contends that Garrett's "failure to supply [him] with his preliminary exam and trial transcripts along with all other documents contained in the court file(s), in order to pursue post-convictions remedies, is a blatant denial of Plaintiff's right to access to the courts, and a denial of his Fourteenth Amendment rights to due process and equal protection of law."  Doc. Ent. 30 at 9.  Plaintiff argues that (A) he "has not received a copy of his criminal proceeding record at public expense, as required by law[,]" (B) he "was not required to show good cause for trial and preliminary exam transcripts that are contained in the court file.  And the plaintiff's indigency has been well established[,]" and (C) he "may request documents or transcripts to pursue other post-conviction remedies after an appeal of right and appeal by leave has been exhausted."  Doc. Ent. 30 at 10-19.  Plaintiff requests that the Court deny defendant's dispositive motion, grant plaintiff's dispositive motion, and award plaintiff the relief he seeks in his complaint.  Doc. Ent. 30 at 3, 20.

On February 26, 2008, defendant filed a motion for extension of time to file response to plaintiff's motion for summary judgment and defendant's reply to plaintiff's response to defendant's motion for summary judgment.  Doc. Ent. 32.  On February 27, 2008, I entered an order granting defendant's motion for extension and setting the deadline for April 21, 2008.  Doc. Ent. 33.

**On April 22, 2008, defendant filed a response to plaintiff's motion for summary judgment, arguing:**

---

[13]It appears that the same 32-page document was filed twice.  Doc. Entries 30 and 31.

**A.     Defendant can have no liability on plaintiff's claims because she has no personal knowledge of & no personal involvement in the acts or omissions that are the basis of plaintiff'[s] 42 U.S.C. § 1983 claim.**

**B.     Defendant is entitled to quasi-judicial immunity on plaintiff's claims.**

**Doc. Ent. 34.**  Attached to defendant's response is the April 21, 2008, affidavit of Cathy M. Garrett.  Doc. Ent. 34-3.[14]

**On May 7, 2008, plaintiff filed a reply to defendant's response to motion for summary judgment.  Doc Ent. 37.**

**F.     Fed. R. Civ. P. 56**

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care System*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248).  In deciding a motion

---

[14]On the same day, defendant filed a motion to accept defendant's response to plaintiff's motion for summary judgment filed one day beyond filing deadline.  Doc. Entries 35 and 36.  On August 1, 2008, I entered an order granting defendant's motion for extension.  Doc. Ent. 39.

In his May 7, 2008, reply, plaintiff addresses defendant's filing of an untimely response.  Doc. Ent. 37 at 2-3.  Plaintiff notes that defendant's motion (actually filed on April 22, 2008) is not dated and certifies that it was electronically filed on April 21, 2008.  Doc. Ent. 37 at 3; Doc. Ent. 34 at 4.  However, plaintiff also notes that defense counsel's e-mail to the Court Clerk, purportedly sent before midnight on April 21, 2008, was time-stamped April 22, 2008 at 12:05 a.m.  Doc. Ent. 37 at 3, 10.  Plaintiff argues that defendant's April 22, 2008, response "should be dismissed as untimely and Plaintiff's Motion for Summary Judgment should be granted."  Doc. Ent. 37 at 3.  In light of my August 1, 2008 order, the Court need not address this request.

for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

The moving party's initial burden differs depending on whether the non-movant or the movant bears the ultimate burden of proof on the issue on which summary judgment is sought. In the former case, "[t]he moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

However where "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense." *Stat-Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1335 (D. Colo. 1997); *see also*, *United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in State of Ala.*, 941 F.2d

1428, 1438 (11th Cir. 1991); *Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992).[15]

In other words, in such a case the movant "must satisfy both the initial burden of production on

the summary judgment motion–by showing that no genuine dispute exists as to any material

fact–and the ultimate burden of persuasion on the claim–by showing that it would be entitled to a

directed verdict at trial." William W. Schwarzer, et al., *The Analysis and Decision of Summary

Judgment Motions*, 139 F.R.D. 441, 477-78 (1991). "Once a moving party with the burden of

proof makes such an affirmative showing, it is entitled to summary judgment unless the non-

moving party comes forward with probative evidence that would demonstrate the existence of a

triable issue of fact." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003).

To create a genuine issue of material fact, however, the non-movant must do more than

present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the
> nonmoving party for a jury to return a verdict for that party. If the [non-
> movant's] evidence is merely colorable, or is not significantly probative,
> summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23;

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus,

"[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will

---

[15]*See also International Ass'n of Heat and Frost Insulators and Asbestos Workers Local
Union 42 v. Absolute Environmental Services, Inc.*, 814 F.Supp. 392, 401 (D. Del. 1993) ("When
the moving party seeks summary judgment based on a claim or defense upon which the moving
party bears the ultimate burden of proof at trial, the moving party must establish every element of
that claim or defense as a matter of law such that no reasonable jury could return a verdict for the
nonmovant.").

not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.[16]

## G.    Analysis

### 1.    Plaintiff's Complaint Is Based Upon The First and Fourteenth Amendments.

The substance of plaintiff's complaint is set forth in two pages. Doc. Ent. 1 at 4-5. Plaintiff claims he "has been denied due process and equal protection of the law, where officials acting under color of state law have refused to forward [him] a copy of his preliminary examination and trial transcripts [to which] he is entitled pursuant to [M.C.R.] § 6.433(C)." Doc. Ent. 1 at 4. Specifically, plaintiff states that he "seeks relief in the Federal Court to vindicate his right of access to the courts, guaranteed under the 1st [A]mendment to the [U]nited [S]tates [C]onstitution; [r]ight to a copy of his transcripts to appeal his criminal conviction, guaranteed under the 14th [A]mendment to the [U]nited [S]tates [C]onstitution." Doc. Ent. 1 at 4.

----

[16]Plaintiff contends his motion is brought in part pursuant to Fed. R. Civ. P. 12(c), which provides that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." Doc. Ent. 30 at 1, 3 ¶ 7. However, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *Gulf Coast Bank & Trust Co. v. Reder*, 355 F.3d 35, 38 (1st Cir. 2004) ("Where a motion for judgment on the pleadings introduces materials [outside] the record for the court's consideration . . . the court has broad discretion either to include or to exclude the proffer. So long as the court does not exclude the tendered materials, the summary judgment standard governs the disposition of the motion.").

At issue before the Court are cross-motions for summary judgment. Doc. Ent. 26 and 31. Defendant's motion, for example, introduces Detroit Recorders Court records (Doc. Entries 28 & 28-2), as well as the July 23, 2004 from the Office of the Wayne County Clerk (Doc. Ent. 28-4 at 2). Plaintiff's motion introduces letters which were also attached to his complaint. Therefore, this report addresses each party's motion under the Rule 56 standard.

He also states he has been "denied access to the courts, in violation of the 1st, 5th, [and] 14th [A]mendments to the [U]nited [S]tates [C]onstitution." Doc. Etn. 1 at 5.

Plaintiff claims that he sought copies of his preliminary examination and trial transcripts "to prepare and file a MCR 6.500 motion for relief from judgment to pursu[e] post-conviction relief in the state courts." Plaintiff contends that "due process and equal protection guarantee plaintiff a true copy of his trial and preliminary examination transcripts with which to appeal his criminal conviction." Plaintiff claims he is "indigent and without funds to pay for a copy of . . . his preliminary examination and trial transcripts, and without any training in the law or a GED has to rely on other prisoners for any legal assistance[.]" He has written letters since May 13, 1988, and he alleges to have filed "a motion for a copy of his preliminary examination and trial transcripts in the Wayne County Third Judicial Circuit Court [which has allegedly] failed to even respond to [his] motion." Doc. Ent. 1 at 4.

Plaintiff also notes that Michigan's appellate remedy of a M.C.R. 6.500 motion "is what criminal defendant[s] use to exhaust issues before filing a petition for writ of habeas corpus in the federal courts." Plaintiff claims he had been denied the right to file a M.C.R. 6.500 motion and/or petition for writ of habeas corpus (28 U.S.C. § 2254) "by officials . . . who have impeded plaintiff's efforts to even receive a copy of his trial and preliminary examination transcripts to extract appellate issues for review by state and federal courts because of his poverty." Pre-empting a qualified immunity argument, plaintiff contends that defendant "knew plaintiff ha[d] a right guaranteed under the 14th [A]mendment . . . to receive a copy of trial and preliminary examination transcripts to pursu[e] postconviction relief." Doc. Ent. 1 at 5.

Plaintiff also claims that he would be further prejudiced "by the defendants refusal to forward a copy of his trial and preliminary examination transcripts under the provisions of the Anti Terrorism Effective Death Penalty Act, should plaintiff have to file a petition for writ of habeas corpus, 28 U.S.C. § 2254, in the federal courts, whereas plaintiff has sought but been refused a copy of his trial and preliminary examination transcripts in the 1980's with which to exhaust his appellate issues through the state courts."  Doc. Ent. 1 at 5.

**2.     Plaintiff's Claims Should Be Analyzed under the First Amendment Right to Petition Clause, the Fourteenth Amendment Due Process Clause and the Fourteenth Amendment Equal Protection Clause.**

**a.**     Recognizing that "the allegations of [a] pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers[,]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court should construe plaintiff's complaint to allege that (1) defendant's failure to supply plaintiff with a copy of his preliminary examination and trial transcripts free of charge has thwarted his effort to bring a motion for relief from judgment under M.C.R. 6.500 and/or a petition for writ of habeas corpus; (2) a defendant who was convicted in state court has a right to a free copy of his preliminary examination and trial transcripts, either on a motion for relief from judgment or on a federal petition for writ of habeas corpus, where his appeal of right, his application for leave to appeal to the Michigan Court of Appeals, and/or his application for leave to appeal to the Michigan Supreme Court have concluded or the opportunity to do so has expired; (3) whether M.C.R. 6.433(C) creates an entitlement to a free-copy of his preliminary examination and trial transcripts which is protected by the due process clause of the Fourteenth Amendment; and (4) whether M.C.R. 6.433(C), as applied by defendant with respect to plaintiff's requests for copies of plaintiff's preliminary examination and trial transcripts, has

operated to deny plaintiff equal protection of the laws as set forth in the Fourteenth Amendment.[17]

**b.**     The First Amendment provides that "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances."  U.S. Const. amend. I.  The Fourteenth Amendment provides in part that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

**c.**     Prisoners have a fundamental right of access to the courts.  *See Bounds v. Smith*, 430 U.S. 817, 821 (1977).  "The right springs from the Due Process Clauses of the Fifth and Fourteenth Amendments and the right of petition found in the First Amendment," *Hodge v. Prince*, 730 F. Supp. 747, 751 (N.D. Tex. 1990), as well as from the Privileges and Immunities Clause of Article IV.  *See Chambers v. Baltimore & O.R. Co.*, 207 U.S. 142, 148 (1907).  A prisoner's access to the courts must be adequate, effective and meaningful.  *See Ryland v. Shapiro,* 708 F.2d 967, 972 (5th Cir. 1983) (citing *Bounds*, 430 U.S. at 822).

A prisoner asserting a denial of access to courts claim must satisfy the constitutional standing requirement by alleging an actual injury.  *See Lewis v. Casey,* 518 U.S. 343, 349, 351-53 (1996).  To meet this requirement, a plaintiff must show that the actions of the prison officials "hindered the prisoner's efforts to pursue a nonfrivolous claim."  *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996); *accord Lewis*, 518 U.S. at 353; *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996); *Stewart v. Block*, 938 F.Supp. 582, 586 (C.D. Cal. 1996) (plaintiff must

---

[17]This is different than a contention that defendant is not complying with the M.C.R. 6.433 regarding the provision of court records to indigent defendants and in so doing violates his rights.

show "a specific instance in which he was actually denied access to the courts.") (internal

quotation omitted). Further, "the injury requirement is not satisfied by just any type of frustrated

legal claim." *Lewis*, 518 U.S. at 354. The right of access to the courts "does not guarantee

inmates the wherewithal to transform themselves into litigating engines," and thus the right is

limited to safeguarding prisoners' ability "to attack their sentences, either directly or collaterally,

and in order to challenge the conditions of their confinement." *Id.* at 355.

**d.**     The Fourteenth Amendment does not protect against all of the State's deprivations of life,

liberty, or property. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981).[18] It protects against only those

deprivations of life, liberty, or property that are "without due process of law." *Id.*

"[T]he fact that prisoners retain rights under the Due Process Clause in no way implies

that these rights are not subject to restrictions imposed by the nature of the regime to which they

have been lawfully committed." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "[A] person's

liberty is equally protected, even when the liberty itself is a statutory creation of the State. The

touchstone of due process is protection of the individual against arbitrary action of government,

*Dent v. West Virginia*, 129 U.S. 114, 123 (1889)." *Wolff*, 418 U.S. at 558. *See also Meachum v.*

*Fano*, 427 U.S. 215, 216, 223-224 (1976) ("the Due Process Clause of the Fourteenth

Amendment [does not entitle] a state prisoner to a hearing when he is transferred to a prison the

conditions of which are substantially less favorable to the prisoner, absent a state law or practice

conditioning such transfers on proof of serious misconduct or the occurrence of other events."

---

[18]In *Daniels v. Williams*, 474 U.S. 327 (1986), the Supreme Court reconsidered its statement in *Parratt* that "'the alleged loss, even though negligently caused, amounted to a deprivation.'" *Daniels*, 474 U.S. at 328 (citing *Parratt*, 451 U.S. at 536-537). The Court held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986)

"[T]he transfer of respondents from Norfolk to Walpole and Bridgewater [did not] infringe[] or implicate[] a 'liberty' interest of respondents within the meaning of the Due Process Clause. "); *Sandin v. Conner*, 515 U.S. 472, 487 (1995) ("neither the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff* [*v. McDonnell*, 418 U.S. 539 (1974)]. The regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life."). *See also Boddie v. Connecticut*, 401 U.S. 371, 380-381, 383 (1971) (concluding that "the State's refusal to admit these appellants to its courts, the sole means in Connecticut for obtaining a divorce, must be regarded as the equivalent of denying them an opportunity to be heard upon their claimed right to a dissolution of their marriages, and, in the absence of a sufficient countervailing justification for the State's action, a denial of due process[,]" and holding that "a State may not, consistent with the obligations imposed on it by the Due Process Clause of the Fourteenth Amendment, pre-empt the right to dissolve this legal relationship without affording all citizens access to the means it has prescribed for doing so.").

**e.**     In *Griffin v. Illinois*, 351 U.S. 12 (1956), the Court considered "whether Illinois may, consistent with the Due Process and Equal Protection Clauses of the Fourteenth Amendment, administer [its statute providing that 'Writs of error in all criminal cases are writs of right and shall be issued of course[,]'] so as to deny adequate appellate review to the poor while granting such review to all others." *Griffin*, 351 U.S. at 13. In 1956, the Supreme Court stated that "[d]estitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts." *Griffin v. Illinois*, 351 U.S. 12, 19 (1956). However, the

Supreme Court noted, "[w]e do not hold . . . that Illinois must purchase a stenographer's transcript in every case where a defendant cannot buy it.  The Supreme Court may find other means of affording adequate and effective appellate review to indigent defendants."  *Griffin*, 351 U.S. at 20.

In *Mayer v. City of Chicago*, 404 U.S. 189 (1971), the Supreme Court stated that "whether an appeal is discretionary or as of right does not affect an indigent's right to a transcript, since '[i]ndigents must . . . have the same opportunities to invoke the discretion of the' court as those who can afford the costs."  *Mayer*, 404 U.S. at 190-191 n.1 (1971) (citing *Burns v. Ohio*, 360 U.S. 252, 258 (1959)).  The Supreme Court concluded that "[an] appellant cannot be denied a 'record of sufficient completeness' to permit proper consideration of his claims.  We repeat that this does not mean that he is automatically entitled to a full verbatim transcript."  *Maye*r, 404 U.S. at 198.

In *Smith v. Robbins*, 528 U.S. 259 (2000), the Supreme Court characterized *Griffin* as "impos[ing] no broad rule or procedure but merely h[olding] unconstitutional Illinois' requirement that indigents pay a fee to receive a trial transcript that was essential for bringing an appeal."  *Smith*, 528 U.S. at 274.  The Court held that "the *Anders*[19] procedure is merely one method of satisfying the requirements of the Constitution for indigent criminal appeals.  States may-and, we are confident, will-craft procedures that, in terms of policy, are superior to, or at least as good as, that in *Anders*.  The Constitution erects no barrier to their doing so."  *Id*. at 276.  "[O]ur case law reveals that, as a practical matter, the [Equal Protection and Due Process] Clauses largely converge to require that a State's procedure 'affor[d] adequate and effective

---

[19]*Anders v. California*, 386 U.S. 738 (1967).

appellate review to indigent defendants,' *Griffin*, 351 U.S., at 20, 76 S.Ct. 585 (plurality

opinion)." *Id*. "A State's procedure provides such review so long as it reasonably ensures that

an indigent's appeal will be resolved in a way that is related to the merit of that appeal." *Smith*,

528 at 276-277.

**3.      However, Garrett is entitled to quasi-judicial immunity.**

**a.**      Plaintiff sues Garrett in her individual and official capacity.  Doc. Ent. 1 at 1.  His request

for relief seeks an award of $1,000,000 in compensatory damages and $1,000,000 in punitive

damages, as well as an award of costs.

     "State officers in their official capacities, like States themselves, are not amenable to suit

for damages under § 1983." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24

(1997).  "[A] state official in his or her official capacity, when sued for injunctive relief, would

be a person under § 1983 because 'official-capacity actions for prospective relief are not treated

as actions against the State.'" *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 n.10

(1989) (quoting *Kentucky v. Graham*, 473 U.S., at 167, n. 14, 105 S.Ct., at 3106, n. 14; *Ex parte

Young*, 209 U.S. 123, 159-160 (1908)).  Because plaintiff's complaint lists only monetary

damages and not injunctive relief in the "relief sought" section, Doc. Ent. 1 at 5, this report does

not address whether plaintiff's claims against Garrett in her official capacity survive summary

judgment.

**b.**      "State officers are subject to § 1983 liability for damages in their personal capacities,

however, even when the conduct in question relates to their official duties."  *Id*. (citing *Hafer v.

Melo*, 502 U.S. 21, 25-31 (1991)).  However, "an official in a personal-capacity action may,

depending on his position, be able to assert personal immunity defenses[.]" *Kentucky v. Graham*, 473 U.S. 159, 166-167 (1985) (citing cases).

Defendant argues that she "is entitled to quasi-judicial immunity on plaintiff's claims." Doc. Ent. 34 at 3-4. Defendant contends that even if she "has some personal involvement in handling plaintiffs' request for post-conviction documents, she would be entitled to quasi-judicial immunity from suit." Doc. Ent. 34 at 3.

As an initial matter, although defendant's January 21, 2008, dispositive motion contends that "plaintiff's claims against [her] are without merit and plaintiff's complaint should be dismissed with prejudice," Doc. Ent. 26 at 8-9, defendant's arguments regarding personal knowledge or involvement and quasi-judicial immunity were not raised in its own motion for summary judgment. Rather, they were raised in response to plaintiff's motion for summary judgment. It is unclear why defendant did not raise these arguments in her own motion for summary judgment. *Brown v. Crowley*, 312 F.3d 782, 784, 787-788 (6th Cir. 2002) ("We need not address this argument, however, because the defendants did not raise the affirmative defense of qualified immunity in their motion for summary judgment. Although the defendants preserved the defense in their first responsive pleading and in their answer to Brown's complaint, they did not pursue this argument before the district court in the motion for summary judgment that they filed after the case was remanded.")

Nonetheless, because "immunity granted by law" and the failure "to state a claim for which relief could be granted" were raised as affirmative defenses (Doc. Ent. 7 at 2 ¶¶ 2, 4), because plaintiff registered his opposition to these bases for summary judgment in his May 7, 2008 (Doc. Ent. 37) reply, and because the Court may address the issue of absolute immunity sua

sponte,[20] the personal involvement and quasi-judicial immunity arguments will be addressed in this report.

To the extent Garrett is sued in her individual or personal capacity for damages, she is entitled to quasi-judicial immunity. Defendant contends that "the courts in this Circuit have routinely dismissed lawsuits against judges, court clerks, and court administrators for such conduct, determining that those action or omissions are 'intertwined with the judicial process' and, therefore, entitled to immunity." Doc. Ent. 34 at 3. Here, defendant relies upon numerous Sixth Circuit cases. *Foster v. Walsh*, 864 F.2d 416, 416-418 (6th Cir. 1988); *Washington v. Shelby County, Tenn.*, No. 88-6321, 1989 WL 63896 (6th Cir. June 15, 1989) (citing *Foster*, 864 F.2d at 417-418); *Brown v. Glasser*, No. 88-3993, 1989 WL 20614, *1 (6th Cir. Feb. 28, 1989) ("plaintiff failed to state a claim against the clerk because judicial support staff are entitled to quasi-judicial immunity, absent evidence that they have acted maliciously or corruptly."); *Mwonyonyi v. Gieszl*, No. 89-5495, 1990 WL 10713, *2 (6th Cir. Feb. 9, 1990) ("Sohen [court deputy clerk] has absolute quasi-judicial immunity for damages as his duties are related to the district court's judicial process."); *Ortman v. Michigan*, No. 92-2177, 1994 WL 12230, *1 (6th Cir. Jan. 18, 1994) ("when court personnel act in performance of an integral part of the judicial process or act pursuant to court orders, quasi-judicial immunity applies. *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983). Thus, the two defendants (Norbert Jaworski and Hugh Dean, Jr.) brought into this action for their actions as court clerks are also immune."); *Petersen v. Garett*, No. 04-60196, 2007 WL 465732, *3 (E.D. Mich. Feb. 6, 2007) (Battani, J.) ("court clerks and other

---

[20] *Burton v. Mortimer*, No. 99-1956, 2000 WL 876517 (6th Cir. June 22, 2000) (affirming "sua sponte dismiss[al of] the complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A for failure to state a claim and because the defendants [we]re entitled to absolute immunity.").

quasi-judicial officers are immune from suit for their actions at work, provided those actions are intertwined with the judicial process."); and *Smith v. Shelby County, Tenn.*, 3 Fed.Appx. 436, 437-438 (6th Cir. 2001) ("The district court properly found that the individual defendants [a county court clerk and a prosecuting attorney] were protected by quasi-judicial and prosecutorial immunity.").

"It is well established that judges and other court officers enjoy absolute immunity from suit on claims arising out of the performance of judicial or quasi-judicial functions. *Pierson v. Ray*, 386 U.S. 547, 553-54[] (1967) (judges); *Denman v. Leedy*, 479 F.2d 1097, 1098 (6th Cir.1973) (municipal court clerk). It is equally clear that judges and other court officers are not absolutely immune from suits based on performance of non-judicial functions. *Forrester v. White*, 484 U.S. 219[] (1988)." *Foster*, 864 F.2d at 417. "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (citing *Scruggs v. Moellering*, 870 F.2d 376 (7th Cir. 1989), *cert. denied*, 493 U.S. 956 (1989)[21]). "[J]udicial support staff are entitled to quasi-judicial immunity, absent evidence that they have acted maliciously or corruptly." *Brown v. Glasser*, No. 88-3993, *1 (Feb. 28, 1989).

Plaintiff replies that defendant "is not entitled to quasi-judicial immunity on plaintiff's claims[.]" Doc. Ent. 37 at 5-6. Within this argument, plaintiff contends that the court rule

---

[21]In *Scruggs*, the Seventh Circuit applied absolute immunity to a court reporter. *Scruggs*, 870 F.2d at 377. However, in *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993), the United States Supreme Court stated that "court reporters do not exercise the kind of judgment that is protected by the doctrine of judicial immunity." *Antoine*, 508 U.S. at 437.

requires the court clerk "to perform the act in question." Plaintiff contends that "[t]he routine duty of clerks does not fall within the very narrow exception for clerical actions explicitly commanded by a court decree." Citing *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976) ("[t]he fate of an official with qualified immunity depends upon the circumstances and motivations of his actions, as established by the evidence at trial."), plaintiff contends that "[d]ismissal of an action on the basis of immunity is proper only when the official is absolutely immune and not when he/she is qualifiedly immune." Doc. Ent. 37 at 5. Plaintiff contends that "[c]lerks performing routine duties do not enjoy an absolute immunity from damages actions for injuries caused by their actions or omission of actions." Plaintiff also relies upon *Denman v. Leedy*, 479 F.2d 1097, 1098 (6th Cir. 1973) ("As the plaintiffs' charge relates to an act performed by the Clerk within the scope of his official quasi-judicial duties, this defendant is entitled to immunity."). Doc. Ent. 37 at 6.

Here, the issue is whether Garrett is entitled to quasi-judicial immunity regarding her responses, or lack thereof, to plaintiff's transcript requests. "[I]n determining immunity, we examine 'the nature of the function performed, not the identity of the actor who performed it.'" *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). At least one decision from the Sixth Circuit supports the conclusion that Garrett is entitled to quasi-judicial immunity with respect to transcript requests. *Lyle v. Jackson*, 49 Fed.Appx. 492, 494 (6th Cir. 2002) ("Lyle sought monetary damages from two court clerks whom he alleged failed to provide him with requested copies of previous filings and transcripts. The complaint was properly dismissed as to these defendants on the basis of quasi-judicial immunity.") (citing *Foster v. Walsh*, 864 F.2d 416, 418 (6th Cir.1988)).

Furthermore, in another prisoner civil rights case, this Court found that Garrett was entitled to quasi-judicial immunity with respect to the plaintiff's transcript request. *See Walthall v. Garrett*, No. 2:07-CV-13117-DPH-CEB, 2008 WL 440648, 2 (E.D. Mich. Feb. 14, 2008) (Hood, J. order accepting report and recommendation of Binder, M.J.) ("Defendant Garrett, the Wayne County Clerk, is entitled to quasi judicial immunity. *See Foster v. Walsh*, 864 F.2d 416, 418 (6th Cir.1988). Plaintiff contends that Defendant Garrett acted outside the exercise of her functions with deliberate indifference, and alleges various acts of wrongdoing by the county clerk, ranging from malfeasance and fraud, to nonfeasance. This Court finds that Defendant Garrett's quasi judicial immunity encompasses the alleged wrongdoing of not furnishing the 1986 transcripts in question in this case, as that function is not outside the scope of her employment as a matter of law.").

Accordingly, the Court should conclude that defendant is entitled to quasi-judicial immunity and on that basis grant defendant's motion for summary judgment (Doc. Ent. 26) and deny plaintiff's motion for summary judgment (Doc. Ent. 31).

## III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this

Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231, American Federation of Teachers*, AFL-CIO, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives_____
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 8/28/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on August 28, 2008.

s/Eddrey Butts_____
Case Manager